Mr. Court, case number 151881, MIT v. Shire Pharmaceuticals, the appeal from a judgment of the District Court in the District of Massachusetts. All right, you're going to have to help me with your pronunciation. Kuzmich? Okay. And you want five minutes for rebuttal? Yes, please, Your Honor. You'll be the first person who's managed to save a full five minutes, but we'll see. May I please report? Yes. Good morning, Judge O'Malley and Judge Chen and Judge Stoll. This case, probably like the last one, is about disclaimer. And it's our position that it is clear and unequivocal that the claim terms vascularized organ tissue and cells derived from the vascularized tissue were disclaimed, and that cells derived from the vascularized tissue must require parenchymal cells and vascular organ tissue must be limited or must not include skin. And I think we can begin by looking at what does this invention... These are really two different points, right? Yes, Your Honor. There was a disclaimer of skin generally. Yes, Your Honor. And then there was a disclaimer of these types of cells. Yes, the requirement to use those cells. The requirement to use them. Yes. Okay. And so I think both tie into what is actually the invention here. The invention here is making organs or organ equivalents that are supposed to supplement lost organ function. How does that actually happen? That happens by using the cells that have the function that are specific to the organ you're trying to replace, and those are parenchymal cells. It's a standard definition, a dictionary. It's the functional cells of the organ. And what we find, and I'll begin with the cells and our position on specification disclaimer, is that even at the outset, at the summary of the invention, it states the invention uses functional cells. They're placed on a polymer, and then they're grown. It's implanted. The spec also talks about skin, though, right? Yes, it does. It says, you know, it's therefore an object of invention to produce organs, including skin, et cetera, et cetera. And so going to the issue of vascular organ tissue and skin, I think that is different than the cells because the skin was actually included in the specification. And I think that you might more consider a classic prosecution history disclaimer because the applicants started thinking skin could be an organ of the invention. What I think is important is that if you fast forward to the prosecution history, they actually state later on when they disclaim skin, they say, look back to our application. We distinguished skin from organs, and we identify that. How about the fact that they tried to actually expressly claim non-skin? They tried to actually expressly have their claims say that skin wouldn't be an organ or wouldn't be something that was within the scope of the claims, and the examiner did not allow them to do so. Why doesn't that undercut your disclaimer argument? Absolutely. And I think what that is is the examiner wasn't looking at how it was characterized, how skin was characterized in the specification. And at that point in time, the inclusion of non-skin cells that you refer to was 1989. Fast forward in 1995 is when the applicants said, take a look at our specification. Skin is distinguished from organs. And if you look at the specification where they refer you to, there's quotes around organ when it refers to skin. Well, that's because there is vascularized skin, correct? There is vascularized skin. But the issue at that point in time was organs as opposed to skin. They said that the prior art was good for making skin as opposed to organs. And so I think the examiner didn't recognize that there is a distinction in the specification, although skin is an organ, and we don't dispute that. But the fact is that it has differences, and that was what allows the applicants to distinguish skin over other organs. And so going to your point, Judge, there is a basis to say that skin is not an organ of the invention. Why wouldn't it be just a helpful organizing principle to understand everything that happened in prosecution history? It's just every time the applicants were referring to skin, they were really referring to the epidermis. I don't think a person of ordinary skill in the art looks at skin as just the epidermis. But I guess we're trying to understand if it's even possible to draw a straight line through everything that happened in the prosecution history. One possible way to achieve that would be that in context, what the applicants were talking about when they were talking about skin and everything they were trying to overcome was just in reference to the epidermis portion of the skin. Your Honor, I don't think that there's any evidence in the record to tell you that. I think maybe stepping back now 30 years later, possibly, there is – every time they talked about skin, it was about the skin, the skin equivalents. The prior art makes skin equivalents as opposed to our invention, which is organs. When you keep saying every time, part of me looks at this and I see someone who kept trying to disclaim skin and then ultimately wasn't allowed to, so they went back. And essentially withdrew that disclaimer. Well, I don't think that they withdrew the disclaimer because the final disclaimer where – what we're talking about where the term in 1997, vascularized organ tissue, which is the term in dispute today, that was in the claims. And at that point in time, there was still the statements made by the applicants saying, for example, at A1772-71, the prior art, while suitable for skin repair or for regeneration of non-vascular tissues, cannot without serious modification be applied to the purposes of the presently claimed invention for producing functional vascularized tissues and organs. So throughout the prosecution history, no matter what the claim language was, these statements were being made. And then even at the end, when we're talking about the absolute language that's in dispute here, there is a disclaimer. It's distinguishing what the prior art can make as compared to what is being claimed. And it wouldn't make sense if skin was an organ in this statement. It just wouldn't. Didn't they amend their claim to say it has to be a vascularized organ and then there was a distinction between the dermis and the epidermis? What happened in that response to the office action was that the prior art that was stumping the applicants for so long, they recognized or identified a paper that said that prior art could only make epidermis and some part of the dermis. It could only regenerate the dermis partially. But they never said anywhere here in the prosecution history, I'm going to say, there was no retraction of now, okay, well, our invention encompasses dermis. That's not the case. They didn't say that. They said they continued to call the prior art skin and they contrasted it from their vascularized organs. And even at that point… They didn't say something about the vascularized component of the skin? They talked about the vascularized dermis, dermis being the component of the vascular part of the skin. But that statement and I think that all the disclaimers that we've identified in our briefing before that we consider those disclaimers, I don't think the public or a person of ordinary skill in the art can read those last statements as any kind of retraction. Wait, it says the prior art, while suitable for skin repair or for regenerating non-vascular tissues cannot without serious modification be applied to the purposes of the presently claimed invention for producing functional vascularized tissues and organs. So they are distinguishing between non-vascular and vascular tissues. Right, they're distinguishing between vascular and non-vascular. But there's no distinguishing between the skin being vascular and the different parts of the skin of the prior art in contrast to the invention. There was never a statement here where, okay, now our invention covers the dermal part of the skin. This does not rise to the level of a retraction. But once they amended their claims, they amended their claims, they tried to claim non-skin, they were told they couldn't do that. Why didn't that in itself retract the disclaimer that you are speaking of? Because that, I think what you're talking about is when they added the non-skin cells to the claim. Correct. Right, and then the examiner said there wasn't support for that. Right, so why doesn't that? I mean, you're saying that there's some disclaimer by having statements in the prosecution history where they distinguish the prior art based on it being for skin. Yes. And then they try to claim that our invention just relates to organs that are not skin, and the examiner says, no, you can't do that. Why isn't that enough to retract any alleged disclaimer? Because I think after that, there were multiple other statements that once again said our invention is organs as opposed to skin. For example, in 1995, years after the statement or the insertion of the non-skin cells, was it is clear from the foregoing excerpts from the patent application that construction of matrices for implantation of cells forming organs as opposed to skin is intended. So even if one could consider that insertion of non-skin cells into the claims in 1989 as an attempt, which I think it was, to disclaim skin, they couldn't do it that way. So they continued to try to make these arguments. But I mean, this was going back and forth with the examiner. I think the examiner was getting educated about the distinctions between types of skin. I mean, maybe this is where the phrase comes from, but wasn't there a distinction between thin skin and thick skin? And I think there was. Yes, you're absolutely right. But again, many of those statements, Your Honor, were made in the context of discussing the summary of the invention in addition to various other statements. I think these statements were clear and unequivocal as you walk through the whole file history that they were facing this prior art, their colleagues, the Janus prior art that really focused on making skin equivalents, and that's what was done. So they were distinguishing skin, but then they had to amend the claims to say vascularized organs to try to distinguish that prior art because the examiner wasn't buying their argument based on just distinguishing skin, right? I'm not sure if the examiner wasn't buying that, possibly, but we still have to rely. The public has to rely. This is noticed. It's clear that for 10 years these applicants said this is not skin. Skin is not an organ of invention. The examiner kept saying skin is an organ. The examiner did say that. And so then they had to say, well, what we mean is vascularized organs in order to be able to distinguish that prior art. That's right. That's a way that they distinguish the prior art. But the other distinguishing feature that they made throughout, which I think that a person of ordinary skill in the art and the public needs to rely on, are those multiple times that they have said skin is not an organ of this invention. What if the examiner says, I think skin is an organ of this invention? Even hypothetically, let's just say that somebody has a disclaimer. They try to say my invention is not X. And the examiner comes back multiple times and says, your invention covers X. I read your claims and they cover X. And so then they go ahead and they take a different approach. Is that a disclaimer? That is still a disclaimer because the examiner is going to be using the broadest reasonable interpretation of the invention, of the claims. And so as we discussed earlier, the specification calls skin an organ, even though it differentiates it from others. So the examiner, even though the applicants can say that skin is not an organ, the examiner can look at the claim language and say, from the broadest reasonable interpretation, this could cover skin. And I think we cited in our brief the cases for that and went to Springs Window and said, Springs Window teaches us that even if you have narrowing statements, the examiner, it's not good enough for the examiner because the examiner takes the broadest reasonable interpretation. What happens is that you're still going to be held to that later on in terms of claim construction. Okay, you pretty much used up your rebuttal. I'll give you two minutes for a rebuttal. Thank you, Your Honor. Good morning, Your Honor. Daryl Wiesen on behalf of Appellee's MIT and Boston Children's Hospital. Can we start where your friend on the other side finished, which is what about the fact that we're supposed to be using a different construction now than the examiner uses during the course of the examination? Your Honor, I think that the question that's raised here is whether there's a clear and unmistakable disclaimer, and when you rely on prosecution history disclaimer, the questions are, what are the statements that we've relied on? We have pointed to an A, I think it's 9065 of the record. Judge Stoll, it's not a hypothetical whether the examiner said skin is part of the invention at 9065. I believe the examiner said that. But that's not the only thing we're relying on. Who cares if the examiner buys your disclaimer? If you disclaimed it, you disclaimed it, right? Certainly true, Judge O'Malley, that whether it is the basis for allow or not, there can be a disclaimer if there is a clear and unmistakable statement in the prosecution history or in the specification. Here there is not, quite frankly. The 1995 statement is the one that gives me the most pause with respect to your arguments. It says skin is differentiated from organs, and then you go on later and you actually talk about cells forming organs as opposed to skin. I mean, that's pretty clear, right? If I recall that one correctly, Your Honor, that's at A1645. That specifically refers back to the specification earlier on in that passage. If we look back at the specification and we see how skin is distinguished from other organs, it is certainly true that skin is distinguished, but not because it's not an organ. As Judge Chen was pointing out, the specification is explicit that skin is an organ. It just has some different issues. And I think Judge Chen is also correct that it's fair that what we're talking about really is the difference between the dermis and the epidermis. That becomes clear in the 1997 amendment at the very end of the prosecution. Right, but in 1995, it doesn't look like that's the distinction you're making. It looks like you're making the distinction between organs and skin organs. In context, because it refers back to the specification explicitly, we believe that a person of ordinary skill reading the record as a whole would understand. By referring back to the specification, we're not saying skin is not an organ, because explicitly in the specification we say skin is an organ. What we're saying is skin as an organ raises some different issues. And it does. The epidermis especially raises different issues. Counsel for Shire suggested that this was a situation where there was some unexpected art that forced us to narrow the claims. That's incorrect. The art that was relied on for skin, the Janus art, is actually the art that's disclosed and discussed in the specification in column four. It was this same art back and forth entirely throughout the prosecution that we knew about when we filed the application. And despite knowing about that art, we said that skin is an organ of the invention. Why? Because you can't make the thicker skin with the vascularized dermal tissue with the Janus prior art. They use a different three-dimensional, they use a different scaffold. The real invention here is... Is there such a thing as a scaffold that's not three-dimensional? I mean, it seems a little redundant to call it a three-dimensional scaffold. What happened in this art, Your Honor, is people would grow cells on a flat surface or a basically flat surface, a petri dish, a gel. A three-dimensional scaffold is one in which the cells can grow in all three dimensions. And the scaffold is the supporting structure. So you need to have a... What's critical here for this invention is that you have a structure that spaces the cells from each other, allowing... I got that. I guess maybe I was just being flipped. But I just don't understand how a scaffold could... Picture a scaffold that's anything other than three-dimensional. I haven't thought about the question, Your Honor. I'm not sure I can identify one. I think a person of ordinary skill in the art would understand what the three-dimensional scaffold was, whether or not the three-dimensional was sort of a necessary part of the term. I took you off your argument. Can you go back to the organs as opposed to skin comment in the prosecution history? You were saying or suggesting, intimating, that skin has some different issues, some unique issues. If you look at... But you didn't explain what you meant by that. So if you look in column four of the patent, it's at 844. I'm referring to the 830 patent because there was a continuation in part. There are different specifications, but the 830 is the most comprehensive. It talks about at line, starting about line seven, although different from organs such as the liver and interesting in a number of ways, skin is also an organ subject to damage by disease or injury, which performs the vital role of protecting the body from fluid loss and disease. So what we see throughout column four of the 830 patent is that there is a distinction that's discussed here with skin. That's partially because the applicants are aware of the Janus art. They know that there are some artificial skin references available in the prior art, and they want to acknowledge that's there, but our invention is still different from that. It's different not because we're not skin. It's different because our three-dimensional scaffold is different than the collagen gel that Janus and Burke and Green use. And if you get to column five, they're explicit about that, starting at line ten. It is therefore an object of the present invention to disclose a method and means for creating a variety of organs, including skin. And so what they're pointing out is although there are some differences, and really, Judge Chen, I think you hit on it, that the difference they're talking about is the epidermis versus the dermis. Right, but I guess what I'm trying to figure out is up until 1997, it looked like the applicants were ready to throw skin writ large out the window. Is that fair to say? I think, Your Honor, that what's fair to say is that there was a lot of back and forth with the examiner. This was a groundbreaking invention that they were having trouble explaining to the examiner what it was and getting the examiner to understand the scope of the invention. I guess if the examiner had allowed any version of the claims throughout the prior ten years, then wouldn't it be fair to say that your claims would have been limited to non-skin organs? There were times, certainly when the non-skin limitation was added, that the claims would have been limited. That would not have prevented the applicants from going back with a continuation application. It's not an unusual strategy for a prosecutor. If you're offered half a loaf or seven-eighths of the loaf of bread, to take that piece, file a continuation, and go back and see whether you can get the last piece of it. So what's the best way to look at all of these statements? Is it that there was a last second, just in time, Harry Houdini moved to save themselves from all the disclaiming statements that had happened by going in a different direction with vascularized organ tissue? Or is it that, well, no, we were always talking about epidermis, we just never said the magic word epidermis until the last second? I think what was actually going on is that they were trying to distinguish the prior art in a variety of different ways. What we didn't hear about from counsel for Shire is what claims were pending during these different amendments and different arguments. The claims kept shifting, and one of the things that was added repeatedly was a thickness requirement, that the organ had to be greater than 300 microns. Generally speaking, it was viewed that the skin was going to be narrower than that. And so for many of the amendments that they're talking about, when they talked about thick versus thin, it may have been the case, certainly with the Janus art, with the epidermis, it would have been thinner than that. And so they were trying a variety of ways to get around the prior art. It was not by disclaiming all skin. It was not by disclaiming any of the particular specific disclosed vascularized organs. Instead, it was different claims. That's how I pronounce it. I'm not sure why that's correct. So that's the second issue that was raised in the brief, was to focus on whether we disclaim the parenchymal cells. For that one, they rely on some statements in the specifications, some statements in the prosecution history. But like the case you just heard, there are specific dependent claims to non-parenchymal cells, and there's really no dispute about that. Their expert below, Dr. Badalak, conceded in his declaration that the bone-forming cells are not parenchymal cells. And in fact, the proposed construction from Shire is that it would be parenchymal cells and bone-forming cells. And mouse fibroblasts? Mouse fibroblasts would also be stromal, not parenchymal. That's a critical one for Shire because their product uses fibroblasts. You won't be surprised to know the reason this matters to them is that their claim, at least, is that they don't use parenchymal cells. And they're trying to draw this bright line between parenchymal and stromal and functional and non-functional. But that ignores that, especially for an organ like the skin, the structure is part of the function. There are some references, in fact, in the prosecution history to the fact that structure is a function. There's no sort of bright line between them. And the line that Shire is trying to draw in this disclaimer is one that's artificial and not contained when you read the specification in prosecution history as a whole. I think it's also fair to say that focusing on the parenchymal versus the parenchymal limitation, there's no dispute that the claims as drafted and as issued are simply cells derived from bone-forming cells. They're not derived from vascularized tissue. There's no limitation on which cells. They need to find, again, a clear and unmistakable disclaimer. And when they point even to the summary of the invention, what we see is even the summary of the invention in column six lists these non-parenchymal cells as examples of the invention. And that means that the logic that they're applying, that because we use the word parenchymal sporadically throughout the specification, we must be limited to that, is incorrect. It's inconsistent with both the specification and the dependent claims. And with that, it's impossible to find a clear and unmistakable surrender. Right. Well, the district judge actually, for some reason I thought it was parenchymal, but the district judge actually did say that the use of the word functional and parenchymal were used interchangeably. He suggested it was used interchangeably in one paragraph of the specification, but not throughout the entirety of the specification. And we had a day-and-a-half Markman hearing with Judge Wolf as well as a half-day tutorial, so he was very up to speed on these issues. And his point was in the summary of the invention, it refers to function and then parenchymal, but he did not have any observations or make any findings concerning whether functional was used interchangeably throughout or whether structure could or could not be a function. Okay, so the bone-forming cells, those are the stromal cells, right? They are non-parenchymal. I believe they are stromal, yes. As are the smooth muscle cells, as are the bovine endothelial cells. The smooth muscle cells are claimed in one of the dependent claims in the 193 patent. The bone-forming cells are claimed in a dependent claim of the 830. The bovine endothelial cells are disclosed in the 830 patent and discussed in the specification, but they are not actually claimed in any of the dependent claims. They were used as a model. So is our case law so clear that, hypothetically, if there were very clear what would be otherwise clear disclaimer statements in the prosecution history, that can somehow be undone or washed clean by the end of the prosecution? That, you know, maybe in 1993, one of Skill and the Art would see a very clear statement, but there's still a way to escape that very clear statement by the applicants and patent owners? I think, Judge Chen, that the key here is that there are amendments of the claims and that the language changes. At one point, we actually used the word parenchymal or parenchymal. Other times we've changed and what was issued just had cells derived from vascularized tissue. And having made that change, it's impossible to say there's a clear and unmistakable surrender of the claim language as issued when that language wasn't even in the claims at the time the statements were made that they're pointing to. And when, moreover, there's no language in that final amendment that limits the claims in that way. And it's at that point in that – Counsel for Shire referred to that passage in 1770 and 1771. That's the passage where there's the very explicit distinction between dermis and epidermis. And I think that's a good example where when the claim language changes, you get the explanation. And if there had been a disclaimer, and I don't think there was when you look in context, but it's the reason your case law suggests you have to read the entire prosecution history. I wouldn't suggest that here. It was thousands of pages over 12 years. But you need to look at the entire context. And when you see that context, it's clear that by the end, we wanted the broad scope. There was an interview between the applicants and the examiner, and I believe the examiner's supervisor, where they sat down and said, look, let us try one more time to explain to you why this is a groundbreaking, broad invention. Then by the end, though, the applicants were still loosely talking about skin with respect to Janus, right? Well, there's where they were talking about the dermis versus epidermis. And what they were talking about with Janus was by that time, Janus actually had post art that he had published explaining that his method did not work for dermis. And you needed the spacing of the invention to make it work for the vascularized dermis. It's not prior art, but they were pointing to it as an example that, in fact, what we've been telling you all along is correct, that Janus does not work for the vascularized portion of skin, the dermis. And he now himself acknowledges that. OK. We've got three seconds. You want to wrap up? Your Honor, we think that Judge Wolf did an excellent job below considering this. And we'd ask you to affirm the finding of infringement and validity based on the stipulation from Shire. Thank you. Thank you. And how do you pronounce it? I was pronouncing it Parankamol. OK. I have no idea. I've heard it both ways. OK. Thank you for these two minutes, Your Honors. Commenting on what my colleague said, I'd like to go to the Parankamol, the cells. It was a clear and unmistakable explanation of what the cells of the invention are in the 1996 response to the office action at A1579-80. The applicants expressly stated that the types of cells described in the application are defined in medical dictionaries and textbooks as Parankamol cells. And they go on. And they say that the Parankamol cells applicants have repeatedly tried to use other words to describe the cells, in particular organ cells. And each examiner, of which there have been many or several, has objected to the language of his predecessor. Applicants will use appropriate language that this examiner prefers if necessary. And this only makes sense in that the Parankamol cells are the functional cells. If the object of the invention is to make an organ that supplements lost or supplements lost organ function, you need the Parankamol cells. This is a clear and unmistakable surrender of claim scope. The cells required are Parankamol. And yes, the language did change after. What happened about a year later was the language we see now, cells derived from a vascularized tissue. But there's nothing that retracts this clear and unmistakable surrender. But the word Parankamol was no longer in the claim, right? That's correct, Your Honor. Whereas when there was all this conversation, the word Parankamol was in the claim. And there was an indefiniteness rejection, and there was then all this back and forth about trying to figure out what is the meaning, what is the scope of Parankamol. Right. But just taking out that language out of the claim is not a retraction. And this is the statement that I'm pointing to is not the only statement that we've seen about Parankamol. The specification teaches Parankamol. There was a prior office action response that teaches Parankamol. And so Parankamol was clearly required to make this invention work. I recognize I'm past time. So we would ask that the court reverse the findings of claims instruction that Judge Wolf found. And basically, as a matter of law, Dermagraph does not infringe based upon Shire's proposed instruction. Thank you. Thank you.